

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

Connecticut Financial Center        (203)821-3700
157 Church Street, 25ᵗʰ Floor        Fax (203) 773-5376
New Haven, Connecticut 06510        www.justice.gov/usao/ct

July 12, 2022

Lee Vartan, Esq.
Melissa Wernick, Esq.
Chiesa Shahinian & Giantomasi PC
1 Boland Drive
West Orange, NJ 07052

Paul Murphy, Esq.
Levine Lee LLP
5 Columbus Circle, 11ᵗʰ Floor
New York, NY 10019

      Re:    United States v. Jacob Deutsch
            Case No.     21-mj-496-TOF
                       22-cr-_____-OAW

Dear Attorneys Vartan and Murphy:

This letter confirms the plea agreement between your client, Jacob Deutsch (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

## THE PLEA AND OFFENSE

In consideration for the benefits offered under this agreement, the defendant agrees to waive his right to be indicted and to plead guilty to a one-count information charging a violation of 18 U.S.C. § 1349 (conspiracy to commit mail fraud or wire fraud). *and* (SG) *Je*

The defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

(SG) *Je*
*and* *Je*
*Je*

1. There was an unlawful agreement between two or more people to commit mail fraud or wire fraud affecting a financial institution; and
2. The defendant knowingly and intentionally became a member of, or a participant in, that unlawful agreement.

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 2*


## THE PENALTIES

### Imprisonment

This offense carries a maximum penalty of 30 years imprisonment.

### Supervised Release

In addition, the Court may impose a term of supervised release of not more than five years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to three years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

In addition to the standard conditions of any supervised release, the defendant does not object to the Court ordering the following additional condition: The defendant shall be prohibited from engaging in any real estate related business with respect to the properties specifically identified in the "Stipulation of Offense Conduct and Relevant Conduct," other than as necessary for winding down, ~~and shall not engage in any new real estate related business in the District of Connecticut during the period of supervised release.~~

### Fine

This offense carries a maximum fine of $1,000,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; (3) $250,000; or (4) the amount specified in the section defining the offense, which is $1,000,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on Count One. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

### Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court. In any case in which the United States

is a victim, the district court will ensure that all other victims receive full restitution before the United States receives any restitution. 18 U.S.C. § 3664(i).

<u>Interest, penalties and fines</u>

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g).

## **THE SENTENCING GUIDELINES**

<u>Applicability</u>

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guidelines determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guidelines application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

<u>Acceptance of Responsibility</u>

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 4*

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The parties agree that the defendant's base offense level under U.S.S.G. § 2B1.1(a)(1) is seven.

The parties disagree about the appropriate loss amount under U.S.S.G. § 2B1.1(b)(1), as well as the applicability of the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10), and therefore the ultimate guideline range. The parties agree that the loss amount is calculated by applying Application Note 3 to U.S.S.G. § 2B1.1(b)(1).[1]

---

[1] Application Note 3(E) to § 2B1.1(b)(1) provides that loss shall be reduced by the following:

. . .

(ii) In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 5*

By the Government's calculation, according to the formula in Application Note 3 and using the most recent tax assessment value of the collateral as credits against the current unpaid principal balances of the mortgage loans, the total loss (including relevant conduct) is more than $3,500,000 but less than or equal to $9,500,000, increasing the base offense level by 18 pursuant to U.S.S.G. § 2B1.1(b)(1)(J). The Government contends that two levels are added pursuant to U.S.S.G. § 2B1.1(b)(10) because the offense involved sophisticated means and the defendant intentionally engaged in or caused conduct constituting sophisticated means. Four levels are added pursuant to U.S.S.G. § 3B1.1(a) because the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 28.

By the defendant's calculation, a lower (or zero) loss amount applies, and the sophisticated means enhancement is not applicable. The defendant agrees that four levels are added pursuant to U.S.S.G. § 3B1.1(a) because the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive. Two levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of nine.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 28 (under the Government's calculation), assuming a Criminal History Category I, would result in a range of 78 to 97 months of imprisonment (sentencing table) and a fine range of $25,000 to $1,000,000 (U.S.S.G. §§ 5E1.2(c)(3) and (4)). A total offense level of nine (under the defendant's calculation), assuming a Criminal History Category I, would result in a range of 4 to 10 months of imprisonment (sentencing table) and a fine range of $2,000 to $1,000,000 (U.S.S.G. §§ 5E1.2(c)(3) and (4)). The defendant is also subject to a supervised release term of 2 years to 5 years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

---

(iii) Notwithstanding clause (ii), in the case of a fraud involving a mortgage loan, if the collateral has not been disposed of by the time of sentencing, use the fair market value of the collateral as of the date on which the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*.

In such a case, there shall be a rebuttable presumption that the most recent tax assessment value of the collateral is a reasonable estimate of the fair market value. In determining whether the most recent tax assessment value is a reasonable estimate of the fair market value, the court may consider, among other factors, the recency of the tax assessment and the extent to which the jurisdiction's tax assessment practices reflect factors not relevant to fair market value.

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 6*

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 7*

The defendant understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

<u>Waiver of Statute of Limitations</u>

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

<u>Waiver of Right to Challenge Conviction</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Appeal Rights Regarding Sentencing</u>

The parties reserve their respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by 18 U.S.C. § 3742.

<u>Waiver of Challenge to Plea Based on Immigration Consequences</u>

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of the offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 9*

in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the conspiracy to commit mail or wire fraud, which forms the basis of the information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

SARAH GRUBER
HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 10*

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____                    7/12/22
JACOB DEUTSCH                                       Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____                    7/12/22
LEE VARTAN, ESQ.                                    Date
Attorney for the Defendant

_____                    7/12/22
PAUL MURPHY, ESQ.                                   Date
Attorney for the Defendant

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 11*

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the information:

At all times relevant to the Information, B H Property Management, LLC ("BHPM") was a property management limited liability company based in Hartford, Connecticut, which managed numerous multifamily housing properties in Hartford. At all times relevant to the Information, defendant JACOB DEUTSCH was responsible for the day-to-day operations of BHPM, where he worked with Aron Deutsch, who is charged separately.

Beginning in or around September 2016 and continuing through in or about May 2021, the defendant, JACOB DEUTSCH, in the District of Connecticut and elsewhere, with the specific intent to defraud, conspired with others to devise and knowingly participate in a scheme to defraud financial institutions, including CBRE Capital Markets, Inc. ("CBRE"), Greystone Servicing Company, LLC ("Greystone"), Sachem Capital Corp. ("Sachem"), and BSPRT CMBS Finance, LLC ("Benefit Street") (collectively, the "victim financial institutions"), and to obtain money and property from financial institutions by means of false and fraudulent pretenses, representations, and promises, and to use the mail and wire communications in interstate commerce in furtherance of that scheme.

In furtherance of the scheme and conspiracy, JACOB DEUTSCH and his co-conspirators provided false information to (a) the victim financial institutions, (b) government-sponsored enterprises Federal Home Loan Mortgage Company ("Freddie Mac") and the Federal National Mortgage Association ("Fannie Mae"), and (c) the United States Department of Housing and Urban Development ("HUD"), in connection with loans issued by the victim financial institutions and secured by various multifamily housing properties managed by BHPM. The false information overstated the value of multifamily housing properties managed by BHPM and induced the victim financial institutions to issue loans that they otherwise would not have issued on the requested terms, or for amounts larger than they would have authorized had they been provided with truthful information. In addition, the false information induced Freddie Mac and Fannie Mae to purchase the resulting loans from the victim financial institutions, and induced HUD to issue a mortgage insurance commitment to a victim financial institution.

JACOB DEUTSCH, his co-conspirators, and others employed various mechanisms to mislead victim financial institutions regarding the properties' occupancy, an important metric that appraisers and financial institutions use to value multifamily properties. For example, JACOB DEUTSCH:

> (1)   provided false rent rolls to the victim financial institutions and appraisers by e-mail on numerous dates, which either overstated the number of renters in a property by listing fictitious renters or others not actually living there (including by listing BHPM employees, without their knowledge), and/or falsely inflated the amount of rent paid by occupants;
>
> (2)   deceived inspectors into believing that unoccupied apartments were, in fact, occupied, including by staging the apartments with furniture and requiring

BHPM employees to wait in the unoccupied apartments during inspections and to falsely tell inspectors they lived there;

(3)  instructed BHPM employees to lie to inspectors if asked whether there were vacancies in multifamily housing properties that BHPM had falsely represented as 100% occupied;

(4)  e-mailed a victim financial institution doctored electric bills in the names of fake tenants listed on false rent rolls;

(5)  e-mailed a victim financial institution doctored gas bills in the names of fake tenants listed on the false rent rolls;

(6)  e-mailed victim financial institutions falsified leases in the names of fake tenants listed on the false rent rolls;

(7)  e-mailed a victim financial institution pictures of envelopes purporting to constitute mail received by the fake tenants listed on the false rent rolls;

(8)  e-mailed a victim financial institution a picture of a doctored invoice purporting to reflect that a fake tenant had purchased furniture seen in a staged apartment by inspectors during an inspection;

(9)  e-mailed a victim financial institution pictures of money orders purporting to reflect rent payments from fake tenants on falsified rent rolls as proof of payment of rent, when in fact the money orders had been purchased by BHPM employees at the direction of Aron Deutsch, or by Aron Deutsch;

(10) e-mailed a victim financial institution pictures of checks purporting to reflect rent payments from fake tenants on falsified rent rolls as proof of payment of rent, when in fact the checks had been purchased by Aron Deutsch; and

(11) e-mailed a victim financial institution pictures of stamped envelopes in which the money orders and checks purportedly had been sent to the BHPM offices by fake tenants on falsified rent rolls when, in fact, the envelopes had been filled out and mailed by BHPM employees.

JACOB DEUTSCH, his co-conspirators, and others also employed various mechanisms to mislead financial institutions regarding the properties' value in ways other than by manipulating the occupancy rate. For example, JACOB DEUTSCH:

(1)  provided the victim financial institutions false and inflated income statements and financials for the properties;

(2)  e-mailed victim financial institutions doctored bank statements purporting to reflect greater operating income for the properties (and more liquidity of the alleged sponsor);

(3)  e-mailed victim financial institutions doctored HUD-1 settlement statements, doctored or forged purchase and sale agreements, and other documents to overstate the purchase price of various multifamily housing properties when, in fact, the properties had been purchased for lower purchase prices;

(4)  provided victim financial institutions doctored and/or newly created invoices purporting to reflect capital improvements made to various

multifamily housing properties when, in fact, the improvements had not been made, had not been performed by the listed companies or individuals, and/or the costs had been grossly overstated; and

(5) provided victim financial institutions doctored checks purporting to substantiate the purported capital improvements made to various multifamily housing properties when, in fact, the improvements had not been made, had not been performed by the listed companies or individuals, and/or the costs had been grossly overstated.

As part of, and in furtherance of the above conspiracy and scheme, JACOB DEUTSCH, with the specific intent to defraud the victim financial institutions of money or property, caused wire communications to be transmitted in interstate commerce, caused envelopes used in the conspiracy to be delivered by mail, and knowingly made false statements and reports to the victim financial institutions, for the purpose of influencing their actions in connection with an application or loan. As part of and in furtherance of the above conspiracy and scheme, JACOB DEUTSCH organized criminal activity that involved five or more participants (including at least five BHPM employees). In addition, such conspiracy and scheme involved, and false statements or reports were made to mortgage lending businesses relating to loans or applications for the following multifamily housing properties:

| Multifamily Housing Property | Initial Loan Amount |
|---|---|
| 421 Washington Street, Hartford | $ 1,040,000.00 |
| 7 Brownell Avenue, Hartford | |
| 66 Webster Street, Hartford | $ 1,420,000.00 |
| 48 Evergreen Avenue, Hartford | $ 840,000.00 |
| 160 New Britain Avenue, Hartford | $ 2,195,000.00 |
| 21-23 Ward Place, Hartford | $ 1,620,000.00 |
| 296 Hudson Street, Hartford | $ 896,000.00 |
| 44 New Britain Avenue, Hartford | $ 1,900,000.00 |
| 131 Washington Street, Hartford | $ 1,000,000.00 |
| 749 Wethersfield Avenue, Hartford | $ 1,120,000.00 |
| 338-342 Jefferson Street, Hartford | $ 1,344,000.00 |
| 125 Washington Street, Hartford | $ 1,020,000.00 |
| 72-80 Main Street, Hartford | $ 2,513,000.00 |
| 16 Evergreen Avenue (2018), Hartford | $ 2,178,000.00 |
| 53 Evergreen Avenue (2018), Hartford | |
| 12 Willard Street, Hartford | $ 4,315,000.00 |
| 1650-1680 Broad Street, Hartford | $ 2,081,000.00 |
| 90 Webster Street, Hartford | $ 1,239,000.00 |
| 50 Gillett Street, Hartford | $ 3,206,000.00 |
| 17 Marshall Street, Hartford | |

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 14*

| | |
|---|---|
| 61 Willard Street, Hartford | $  1,600,000.00 |
| 128 Collins Street, Hartford | $  2,625,000.00 |
| 16 Evergreen Avenue (2020), Hartford | $  1,926,000.00 |
| 53 Evergreen Avenue (2020), Hartford | $    850,000.00 |
| 194 Washington Street, Hartford | $ 11,000,000.00 |
| 66 Retreat Avenue, Hartford | $    390,000.00 |
| 60 Gillett Street, Hartford | $  1,600,000.00 |

This written stipulation is part of the plea agreement. The defendant and the Government reserve the right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.


JACOB DEUTSCH
The Defendant

SARAH GRUBER
HEATHER CHERRY
ASSISTANT UNITED STATES ATTORNEY


LEE VARTAN, ESQ.
Attorney for the Defendant

PAUL MURPHY, ESQ.
Attorney for the Defendant

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 15*

## <u>RIDER CONCERNING RESTITUTION</u>

   The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

  A. Return the property to the owner of the property or someone designated by the owner; or

  B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -
   (I) the value of the property on the date of the damage, loss, or destruction;  or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

  A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

  B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

  C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

   The order of restitution has the effect of a civil judgment against the defendant.  In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release.  Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court.  *See* 18 U.S.C. §§ 3613A, 3614. The Court

*Lee Vartan, Esq.*
*Paul Murphy, Esq.*
*Page 16*

may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C.
§ 3555.